UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:26-CR-39-KKC-MAS

UNITED STATES OF AMERICA PLAINTIFF

V. **PLEA AGREEMENT**

NASIR ALAMIN LYONS DEFENDANT

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Indictment charging a violation of 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon. The Defendant also agrees to forfeiture of the firearms and ammunition as set forth in the Forfeiture Allegation. At sentencing, the United States will move to dismiss Count 2 of the Indictment.

2. The essential elements of Count 1 of the Indictment are as follows:

(a) That the defendant had been convicted of a crime punishable by imprisonment for more than one year;

(b) That the Defendant knew that he had been convicted of such a crime punishable by imprisonment for more than one year at the time of the offense;

(c) That the defendant, following his conviction, knowingly possessed a firearm; and

(d) That the firearm crossed a state line prior to the defendant's possession.

3. As to Count 1 of the Indictment, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) Law enforcement reports indicate:

a. At approximately 12:00 AM on July 27, 2025, Lexington Police Department ("LPD") observed an individual they identified as Nasir Lyons ("Lyons" or "Defendant") in the area of Short Street and Mill Street in Lexington, KY via the LPD Real Time Intelligence Center ("RTIC") video surveillance. Officers observed Lyons with a bulge in the waistband that was consistent with the appearance of a firearm in the waistband area of one's person. Because Lyons was known to officers to be a convicted felon and prohibited from possessing a firearm, officers in the RTIC contacted officers in the area and requested they make contact with Lyons.

b. When LPD officers responded to the area, Lyons took notice of officers and fled on foot prior to officers making contact. RTIC continued video surveillance of Lyons, and Lyons can be seen using his right hand to support an object in his waistband, consistent with the appearance of holding a firearm. Lyons fled on foot down Limestone Street and turned onto Water Street where he was pursued by LPD until he was apprehended in the entrance to a parking garage. An LPD officer stated that, as Lyons fled on Water Street, he saw a black handgun in Lyons' right hand. The officer's Body Worn Camera corroborates that the officer stated multiple times "drop the gun" while in pursuit of Lyons. When LPD officers apprehended Lyons, he had already laid down on the ground with his feet next to a storm drain. Officers could not locate a firearm on Lyons' person but located a Glock 23 S/N PXL347 ("Glock 23") inside the storm drain immediately at Lyons' feet. The Glock 23 was located without a magazine; however, LPD located a magazine in the construction area of Phoenix Park that contained seventeen live rounds of .40 caliber ammunition. LPD located an additional live round of .40 caliber ammunition on the ground at Limestone Street and Water Street. The magazine and live round were located along the path of LYONS's flight from police and match the caliber of ammunition used by the Glock 23. Analysis of the Glock revealed that a "switch" had been

installed that allowed the firearm to function as an automatic weapon. At the time of arrest, there were no other people in the area apart from Lyons and the officers in pursuit.

c. Law enforcement has since reviewed surveillance footage of the incident. The footage shows Lyons fleeing on foot and apparently dropping something in the storm drain prior to lying down next to the storm drain.

(b) Lyons has been convicted of one or more crimes punishable by more than one year, including a conviction for first-degree wanton endangerment and second-degree assault in Fayette Circuit Court case number 19-CR-01313.

(c) Lyons admits that he knowingly possessed the above-listed Glock firearm, which was manufactured outside the state of Kentucky. He also admits that he knew that a machinegun conversion device or "switch" was affixed to the weapon for the purpose of allowing automatic fire. Lyons further admits that he was prohibited from possessing the firearm as he had been convicted of and knew at the time of the offense that he had been convicted of a crime punishable by imprisonment for more than one year.

4. The statutory punishment for Count 1 of the Indictment is not more than 15 years imprisonment, not more than a $250,000 fine, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of sentencing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guideline calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) The United States Sentencing Guidelines ("U.S.S.G.") in effect as of November 1, 2025, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the facts set forth in paragraph 3 and the provided discovery materials.

(c) Pursuant to U.S.S.G. § 2K2.1(a)(5), the base offense level is at least 18 because the offense involved a firearm described in 18 U.S.C. § 5845(a).

(d) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists as to the application of U.S.S.G. § 2K2.1(a)(5) regarding the base offense level when the offense involved a firearm described in 18 U.S.C. § 5845(a) and the defendant committed the instant offense after sustaining one felony conviction for a controlled substance offense or crime of violence.

7. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4. Further, the parties understand that the United States Probation Office's research of the Defendant's criminal history may yield conviction information that is not currently known to the parties, which may operate to increase the Defendant's offense level under U.S.S.G. § 2K2.1 or other parts of the Sentencing Guidelines.

8. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

9. The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense to which he is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision

of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United

States Attorney's Office of any material changes in his economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the

Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

14. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

15. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

16. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

JASON D. PARMAN
FIRST ASSISTANT
UNITED STATES ATTORNEY

Date: 9/29/26 By: [signature]
Mary Melton
Assistant United States Attorney

Date: 9/10/2026 [signature]

Nasir Alamin Lyons
Defendant

Date: 9/10/26

Holly Iacarrino
Attorney for Defendant